UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARGARET ANN HUFF-ROUSSELLE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:19-cv-10293-IT |
| | * | |
| UNITED STATES, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

August 11, 2020

Before the court is Defendant's Motion to Dismiss (or for Summary Judgment) [#23]. For the reasons set forth below, the motion is DENIED.

I. **FACTUAL BACKGROUND**

The background facts are largely undisputed for purposes of the pending motion. On April 15, 2013, Peter Huff-Rousselle obtained an extension and paid an estimated tax payment of $20,000 for the 2012 tax year. Certified Transcript of Account for Peter Huff-Rousselle, attached as page 7 to Schifano Decl. [#23-3].[1] The IRS record submitted by the government does not reflect whether this extension request was filed only on Peter Huff-Rousselle's behalf or jointly on behalf of Peter Huff-Rousselle and his wife. See id. (including social security numbers for both Peter and Margaret Huff-Rousselle on the account statement reflecting the extension). Peter Huff-Rousselle also had a $3,495 credit for overpaid taxes from the previous tax year. Id.

Margaret Huff-Rousselle states that her husband suffered from a disruption in his cognitive functioning from brain cancer prior to his death. Pl.'s Resp. to Show Cause Order 1–2

---

[1] Counsel filed his declaration as an attachment to the motion, and included the IRS records as pages of counsel's declarations. Under the court's CM/ECF filing guidelines, the declaration should have been docketed as a separate entry, with the records filed as separately numbered attachments. The court expects counsel to comply with CM/ECF guidelines in future filings.

["Pl.'s Resp."] [#25]. Peter Huff-Rousselle passed away on June 24, 2015, without having filed a tax return for the 2012 tax year. See Certified Transcript of Account for Peter Huff-Rousselle and Certificate of Death for Peter Huff-Rouselle, submitted as Schifano Decl. 7, 23 [#23-3].

Meanwhile, on November 12, 2014, Margaret Huff-Rousselle filed her 2012 tax return, with the status of married filing separately. Certified Transcript of Account for Margaret Huff-Rousselle and 1040 tax return for 2012, submitted as Schifano Decl. 4, 17 [#23-3]. Margaret Huff-Rousselle made this election in part because of her husband's medical condition. Pl.'s Resp. 2 [#25]. The tax return showed an overpayment of $8,329, and Margaret Huff-Rousselle elected to credit this amount towards her 2013 tax liability. Certified Transcript of Account for Margaret Huff-Rousselle and 1040 tax return for 2012, submitted as Schifano Decl. at 4, 19 [#23-3].

Sometime in October or November 2016,[2] Margaret Huff-Rousselle attempted to file an amended 2012 tax return. 1040X tax return, submitted as Schifano Decl. 9 [#23-3]. The return was filled out as a joint return for both Peter and Margaret Huff-Rousselle, as husband and wife, with Margaret Huff-Rousselle signing the return on behalf of Peter Huff-Rousselle as his surviving spouse. Id. at 9, 11. The proposed amended 2012 return stated a 2012 tax liability of $45,106 for the Huff-Rousselles, as a couple, against $52,253 in payments (including Peter Huff-

---

[2] The government's motion states that Margaret Huff-Rousselle submitted the 1040X form on November 15, 2016. Br. Supp. Mot. Dismiss (Summ J.) 3 ["Gov't's Mot."] [#23-2] (citing Certified Transcript of Account for Margaret Huff-Rousselle, submitted as Schifano Decl. 4 [#23-3]). However, the record does not support this claim. Although the document at issue is stamped as received on November 15, 2016, it is also stamped with the dates October 21, 2016, October 26, 2016, November 2, 2016, November 7, 2016, and November 17, 2016. 1040X tax return, submitted as Schifano Decl. 9 [#23-3]. The return states that it was signed by the preparer on October 14, 2016, and by Ms. Huff-Rousselle on October 15, 2016. Id. at 11. The document also contains a digital timestamp of October 14, 2016. Id. at 9. But, regardless of the date the document was signed or received by the government, 26 U.S.C. § 7502(a)(1) provides that the date of the United States postmark stamped on the cover of the return "shall be deemed to be the date of delivery." There is no evidence in the record concerning the postmark date.

Rousselle's $3,495 credit from overpayments and the $20,000 paid with his extension request). Id. at 9, line 12, 15. Margaret Huff-Rousselle requested that the resulting $7,147 overpayment to the IRS be refunded to the Huff-Rousselles. Id. at 9, line 21.

On February 17, 2017, the IRS denied the refund claim, asserting that § 6013(b)(2)(A) of the Internal Revenue Code does not allow amended returns based on a married couple's change of election of filing status to be filed three or more years after the original due date. Id. at 24.

Margaret Huff-Rousselle filed her *pro se* complaint in this court on February 15, 2019, requesting a "full refund" of the $7,147 balance on her and her husband's proposed 2012 return. Compl. ¶ 7 [#1]. Plaintiff's complaint states that her husband's health, including his diagnosis of terminal brain cancer, which was documented to the IRS in a March 13, 2017 letter, should suspend the statute of limitations for filing the amended return. Id. ¶¶ 5–6.

## II.   APPLICABLE STANDARD AND STATUTORY SCHEME

Defendant brings its motion both as a motion for summary judgment and a motion to dismiss. To survive a motion to dismiss, the well-pleaded facts in Plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013)) (internal citations omitted). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See id. Although the court ordinarily only considers the complaint's plausible factual allegations on a motion to dismiss, the First Circuit has recognized a narrow exception to this rule, allowing for

the consideration of "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

If a motion presents matters outside of the pleadings that the court does not exclude, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In that event, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

### III.   STATUTORY SCHEME

There are two interacting provisions of the Internal Revenue Code at play in this case. 26 U.S.C. § 6511, entitled "Limitations on credit or refund," sets forth deadlines and limits for obtaining a refund of any overpayment of tax. Section 6013 of the same Title allows a married couple to file a joint return and sets certain conditions for those filings. The government argues that the limitations contained in Sections 6511(b) and 6013 defeat Margaret Huff-Rousselle's claim. See Gov't's Mot. 4–8 [#23-2]. The court reviews the statutory scheme below, starting with § 6511 before turning to § 6013.

#### a.   Internal Revenue Code § 6511

Section 6511 sets forth two limitations on a claim for a refund of a tax overpayment. The first is a "filing" deadline, contained in § 6511(a), which provides that refund claims must be filed within three years from when the return was filed or two years from the time the tax was paid, whichever of such periods expires later. The second limitation, contained in § 6511(b), imposes a restriction commonly referred to as a "lookback period." The term of the lookback period is a function of when the refund claim was filed and whether an extension of the filing deadline was obtained. If the claim was filed within three years from when the return was filed,

then "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." § 6511(b)(2)(A). If the claim was not filed within this three-year period, then "the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." § 6511(b)(2)(B).[3]

Congress has provided in § 6511(h) that the deadlines for filing refund claims, and the lookback periods governing what payments may be refunded, are subject to being suspended during any period in the taxpayer's life that the individual is "financially disabled." The tolling provision is a relatively recent addition to the statute; it was added in 1998 after the Supreme Court decided the previous year that § 6511 was *not* subject to equitable tolling as it was written at the time. See United States v. Brockamp, 519 U.S. 347, 354 (1997); Internal Revenue Service

---

[3] In full, § 6511(b) provides:

> Limitation on allowance of credits and refunds.
> (1) Filing of claim within prescribed period.
> No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.
> (2) Limit on amount of credit or refund.
>     (A) Limit where claim filed within 3-year period.
>     If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.
>     (B) Limit where claim not filed within 3-year period.
>     If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.
>     (C) Limit if no claim filed.
>     If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3202, 112 Stat. 685, 740 (1998). While Congress amended § 6511 to include equitable tolling, the tolling provision was narrowly tailored such that it would only suspend the deadlines where the individual was "unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 26 U.S.C. § 6511(h)(2)(A). Congress further provided that to be granted status of financial disability, proof of impairment must be "furnished in such form and manner as the Secretary may require." Id. The Secretary has promulgated those conditions for proving impairment in Revenue Procedure 99-21.

      b.  **Internal Revenue Code § 6013(b)**

In 1958, Congress enacted § 6013(b) of the Internal Revenue Code "to allow taxpayers to switch to a joint return after initially electing to file as married filing separately—either of which are proper elections. The purpose of allowing this switch was to relieve taxpayers from overpaying their taxes due to an improvident initial election between these two filing statuses." Ibrahim v. Comm'r, 788 F.3d 834, 839 (8th Cir. 2015) (citing S. Rep. No. 82-781, 2018–19). This displaced the previous rule that once a status was elected, it was binding on the taxpayer for that taxable year. Id.

Congress placed a limitation requiring that amendments to joint filing status to be made no later than "3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse)." § 6013(b)(2)(A). Section 6013, unlike Section 6511, does not contain a tolling provision and does not extend the three-year deadline to reflect any extensions to file obtained by the taxpayer.

Section 6013 considers cases where one of the spouses died prior to when the joint return was filed. Section 6013(a)—the overarching provision authorizing a married couple to file a single joint return—provides that a surviving spouse may file a joint return "with respect to both himself and the decedent if no return for the taxable year has been made by the decedent, no executor or administrator has been appointed, and no executor or administrator is appointed before the last day prescribed by law for filing the return of the surviving spouse."[4] § 6013(a)(3). However, § 6013(b)(1)—which concerns taxpayers changing elections from a separate return to a joint return—requires that the joint return "with respect to the decedent can be made only by his executor or administrator."[5]

---

[4] § 6013(a)(3) provides:

> Joint returns
> A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:
> . . . .
> (3) in the case of death of one spouse or both spouses the joint return with respect to the decedent may be made only by his executor or administrator; except that in the case of the death of one spouse the joint return may be made by the surviving spouse with respect to both himself and the decedent if no return for the taxable year has been made by the decedent, no executor or administrator has been appointed, and no executor or administrator is appointed before the last day prescribed by law for filing the return of the surviving spouse. If an executor or administrator of the decedent is appointed after the making of the joint return by the surviving spouse, the executor or administrator may disaffirm such joint return by making, within 1 year after the last day prescribed by law for filing the return of the surviving spouse, a separate return for the taxable year of the decedent with respect to which the joint return was made, in which case the return made by the survivor shall constitute his separate return.

[5] § 6013(b)(1) provides:

> Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. A joint return filed by the husband and wife under this subsection shall constitute the return of the husband and wife for

7

## IV. DISCUSSION

The government argues that Margaret Huff-Rousselle's complaint must be dismissed under both § 6511(b) and § 6013. See Gov't's Mot. 4–8 [#23-2].[6] The court considers each argument in turn.

The government argues that under § 6511(b)(2)(A), the payments at issue were paid in 2013, outside of the "lookback period" for the claim. Gov't's Mot. 7 [#23-2]. The lookback provision extends for "3 years *plus* the period of any extension of time for filing the return." § 6511(b)(2)(A) (emphasis added). The relevant payments were made, for the purpose of the statute, on April 15, 2013, and the Joint Return was filed as early as October 15, 2016, three years and six months after the payments. The government has not established that Margaret Huff-Rousselle did not obtain such an extension as she has claimed. See Pl.'s Resp. 3 [#25]; Gov't's Reply 2 [#26]. Moreover, as noted above, the Certified Transcript for Peter Huff-Rousselle's account includes both Huff-Rousselles' social security numbers, such that the extension request may well have been made on both Huff-Rousselles' behalf. See Certified Transcript of Account for Peter Huff-Rousselle, submitted as Schifano Decl. 7 [#23-3]. In light of the government's failure to establish that no extension request was made on Margaret Huff-

---

such taxable year, and all payments, credits, refunds, or other repayments made or allowed with respect to the separate return of either spouse for such taxable year shall be taken into account in determining the extent to which the tax based upon the joint return has been paid. If a joint return is made under this subsection, any election (other than the election to file a separate return) made by either spouse in his separate return for such taxable year with respect to the treatment of any income, deduction, or credit of such spouse shall not be changed in the making of the joint return where such election would have been irrevocable if the joint return had not been made. If a joint return is made under this subsection after the death of either spouse, such return with respect to the decedent can be made only by his executor or administrator.

[6] The government acknowledges that Ms. Huff-Rousselle's claim meets the filing deadline under § 6511(a) since the 2016 claim was filed within three years of when her return was filed in 2014. Gov't's Mot. 7 [#23-1].

Rousselle's behalf, to the extent the government's motion is based on § 6511(b), it fails regardless of whether it is considered as a motion to dismiss or a motion for summary judgment.[7]

With regard to § 6013, the government argues that Margaret Huff-Rousselle is statutorily barred from now changing her election status to married filed jointly since more than three years have passed since the deadline for the relevant 2012 tax return. See Gov't's Mot. 5–6 [#23-2]. The government contends that under § 6013(b)(2)(A), Margaret Huff-Rousselle needed to change her elected status to a joint return before "the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse)." Id. at 5. However, the government does not address the unique facts presented here where Peter Huff-Rousselle never filed a return for 2012, and Ms. Huff-Rousselle claims that she only filed a separate return that year instead of a married filing jointly return *because of* Peter Huff-Rousselle's medical condition prior to his death. See Pl.'s Resp. 2 [#25]. In this way, the Huff-Rousselle's circumstances leading up to this change of election stands in contrast to those cases where a husband and wife both choose to file separate returns and then later change that election to reduce their tax liability.

At least two courts of appeal have found the limitations provisions in § 6013(b)(2) to be inapplicable where the factual circumstances did not align with the purpose of the statute. In Ibrahim, the Eighth Circuit explained that the purpose of § 6013(b) was to provide taxpayers relief from an "improvident" choice to initially file separate returns "in the absence of informed tax knowledge not possessed by the average person." Ibrahim v. Comm'r, 788 F.3d 834, 839 (8th Cir. 2015) (internal citation omitted). The circuit contrasted this overarching purpose with the specific facts of that case, which concerned an individual who had mistakenly filed as a head-of-

---

[7] Even if it was not strictly timely, Peter Huff-Rousselle's deadline may be subject to the tolling provision provided by 26 U.S.C. § 6511(h)(1)–(2).

household instead of as married filed jointly. Finding that the taxpayer's head-of-household election was not the type of "separate return" envisioned by Congress when passing § 6013(b), the court did not apply the limitations provisions of § 6013(b)(2). Id. In Glaze v. United States, the Fifth Circuit also declined to apply § 6013(b)'s limitations provisions where a decedent's administrator initially filed a return with an election of "single" even though the decedent was in a common-law marriage at the time covered by the return. 641 F.2d 339, 340 (5th Cir. 1981). The Circuit concluded that § 6013 was "inapplicable" to "the unusual factual circumstances" of the case. Id. at 344. It observed that § 6013 was enacted to allow married taxpayers "to escape the adverse financial consequences resulting from an injudicious election to initially file separate returns," whereas in Glaze, the administrator had elected "single" status because he was "caught in the middle of a dilemma" in which the administrator may have been sued by both the children of the decedent and the IRS had he elected "married filed jointly" status for the decedent's return. Id. Applying the limitations provision in § 6013(b) under these circumstances, the circuit concluded, would have been "unreasonable, unfair and burdensome." Id.

The reasoning in Ibrahim and Glaze arguably extends to the factual circumstances present here. Plaintiff's pleadings indicate that there was no election to file separate returns but instead the specific factual circumstances *forced* Margaret Huff-Rousselle to file a separate return while her husband, perhaps due to his medical condition, filed no return at all. See Compl. ¶ 6 [#1]; Certified Transcript of Account for Peter Huff-Rousselle, submitted as Schifano Decl. 7 [#23-3]. This situation contrasts with the text of the relevant statutes and the legislative history, which appear to envision a couple *electing* to file separate *returns* and then having the opportunity to later file a joint return if such a change in election is financially advantageous. See Sen. Rep. No. 781, 82d Cong., 1st Sess. (1951) (noting that § 6013(b) was directed to cases where "married

10

individual income taxpayers who file separate *returns* may exercise the right to change their election and file joint returns at any time within the period of the statute of limitations"); 26 U.S.C. 6511(i)(4) ("For a period of limitations for credit or refund in the case of joint income returns after separate *returns* have been filed, see section 6013(b)(3)"); Glaze, 641 F.2d at 342 ("It is clear that Section 6013 was enacted as a matter of legislative grace to permit married taxpayers to escape the adverse financial consequences resulting from an injudicious election to initially file separate *returns* rather than a single joint return") (emphasis added throughout). While there are arguments to be made for why the reasoning in Glaze and Ibrahim may be inapplicable to the specific circumstances here, the government does not address them in its brief. Accordingly, the court does not resolve the question of the applicability of § 6013(b)(2)'s limitations here but instead invites further briefing at a later date.

The government's brief also fails to address that the proposed amended 2012 return filed by Margaret Huff-Rousselle[8] also constituted *Peter* Huff-Rousselle's first and only tax return for 2012. On its face, the limitation period in § 6013(b)(2) for a change in election is not applicable to Peter Huff-Rousselle because he had not "filed a separate return" for 2012, so the Joint Return did not amount to any change in status. See § 6013(b)(1)–(2). And while the government may argue that Peter Huff-Rousselle's proposed 2012 joint return fails for the fact that it is a joint return with Margaret Huff-Rousselle subject to the limitations under § 6013 and § 6511 as they apply to her, the government has not included these arguments in its brief and the court does not reach them here.[9]

---

[8] As noted earlier, because Peter Huff-Rousselle had not previously filed a return and thus never made an election to file as married filing separately, Margaret Huff-Rousselle may have had authority under 26 U.S.C. § 6013(a)(3) to file the joint return "with respect to both h[er]self and the decedent."

[9] Nor is it readily apparent that these arguments would be successful. As noted above, it is not in the record whether Peter Huff-Rousselle's request for an extension was only on his behalf or on

## V.     CONCLUSION

While the government may ultimately prevail, the pending motion fails to address the specific legal questions raised by the factual circumstances in this case. Accordingly, the government's Motion to Dismiss (or for Summary Judgment) [#23] is DENIED. A status conference will be set to discuss whether Plaintiff's case should proceed as currently pleaded or whether leave should be granted to allow the claim to proceed on behalf of the estate of Peter Huff-Rousselle in addition to, or in lieu of, Margaret Huff-Rousselle.

IT IS SO ORDERED.

Date: August 11, 2020                                                              /s/ Indira Talwani
                                                                                                   United States District Judge

---

behalf of himself and his wife. Even if Peter Huff-Rousselle only requested an extension for himself, it is not apparent why that fact should bar him from obtaining a refund of overpayments *he* made to the IRS. Finally, as discussed above, given the Huff-Rousselles' specific factual circumstances (i.e., Margaret Huff-Rousselle claims she lacked a meaningful choice when filing married filing separately given her husband's medical condition and Peter Huff-Rousselle never filed a separate return) it is not readily apparent that § 6013 is applicable.