IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET ANN HUFF-ROUSSELLE,  )<br>  )<br>      Plaintiff,  )<br>  )<br>v.  )<br>  )<br>UNITED STATES,  )<br>  )<br>      Defendant.  )<br>_____) | Case No. 1:19-cv-10293-IT |

**MEMORANDUM IN SUPPORT OF
DEFENDANT UNITED STATES' SECOND MOTION FOR SUMMARY JUDGMENT**

The defendant United States of America has moved, pursuant to Fed. R. Civ. P. 56 and LR 56.1, for summary judgment dismissing this civil action for a tax refund brought by plaintiff Margaret Huff-Rousselle.[1] The case should be dismissed because plaintiff's administrative claim for refund to the IRS, made on the Form 1040X, did not comply with 26 U.S.C. § 6013(b). Preliminarily, this brief will explain why § 6013(b) is applicable to the instant fact pattern where one spouse (Margaret Huff-Rousselle) filed a separate federal income tax return and then later attempted to file an amended return jointly with her deceased spouse (Peter Huff-Rousselle), who had not previously filed at all. The brief will then apply the two provisions of § 6013(b) that are dispositive of this matter. First, § 6013(b)(2)(A) mandated that the Form 1040X for the 2012 tax year be submitted no later than April 15, 2016, a deadline that was statutorily set at three years after the 2012 return was due without considering any extension to file the return. Second, § 6013(b)(1) required that a Form 1040X for Mr. Huff-Rousselle be submitted by his executor. Because neither of these two conditions was satisfied, the Form 1040X was not a valid refund

---

[1] The United States previously filed a motion for summary judgment (Doc. 23) that the Court denied (Doc. 27). During a telephone conference held on February 25, 2021, the Court stated that the United States could file another summary judgment motion (Doc. 38).

1

claim, and summary judgment should enter in the United States' favor.

**I.    Facts** [2]

1.     Ms. Huff-Rousselle filed her original 2012 federal income tax return approximately 19 months late on November 12, 2014. *See* Ex. 1, Ms. Huff-Rousselle's 2012 Tax Return Transcript (showing "received date" of "Nov. 12, 2014"); Ex. 2, Ms. Huff-Rousselle's IRS Form 4340 for 2012 Income Tax (line showing "Return Filed & Tax Assessed" with filing on "11-12-2014" and an "Assessment Date" of "12-08-2014").

2.     On her original 2012 federal income tax return, Ms. Huff-Rousselle chose the filing status of married filing separately. Ex. 1, Tax Return Transcript (listing "Filing Status" as "Married Filing Separate"); Ex. 3, Ms. Huff-Rousselle's IRS Account Transcript for 2012 Income Tax (same).

3.     On April 15, 2013, plaintiff's husband, Peter Huff-Rousselle, requested a six-month extension of time to file his 2012 federal income tax return (individually and not jointly) and paid $20,000 toward his 2012 taxes. *See* Ex. 4, Check and Form 4868 ("Application for Extension of Time to File Individual Income Tax Return" showing only the name and [redacted] social security number of Peter Huff-Rousselle).[3] This six-month extension is reflected on Mr.

---

[2] As the balance of this brief will explain, the United States contends that some of the facts presented herein are not material to this motion for summary judgment. Nonetheless, we present these facts in the interest of completeness and to allow for a full discussion of some of the issues raised in the Court's Memorandum and Order of August 11, 2020 (Doc. 27).

[3] In the Memorandum and Order, the Court speculated that the presence of Ms. Huff-Rousselle's social security number on the transcript for Mr. Huff-Rousselle's 2012 income tax account might mean that the six-month extension of time applied to both Mr. and Ms. Huff-Rousselle. Doc. 27 at 8. That is incorrect. Even when spouses file separate returns, both spouses' social security numbers appear on such transcripts to facilitate cross-referencing, *i.e.*, to see if both spouses claim the mortgage interest deduction, dependent credits, etc. The extension request form, which was not previously in the record, is in Mr. Huff-Rousselle's name only. Ms. Huff-Rousselle has

(continued...)

Huff-Rousselle's IRS transcripts for his 2012 tax year. *See* Ex. 5, Mr. Huff-Rousselle's IRS Form 4340 for 2012 Income Tax (entry on "04-15-2013" for "Extension of Time to File" with "Ext. Date 10-15-2013"); Ex. 6, Mr. Huff-Rousselle's IRS Account Transcript for 2012 Income Tax (event on 04-15-2013 for "Extension of time to file tax return ext. Date 10-15-2013").

       4.       Mr. Huff-Rousselle died on June 24, 2015. Ex. 7, Death Certificate.

       5.       At the time of his death, Mr. Huff-Rousselle had not filed a 2012 federal income tax return. *See* Ex. 5 ("No record of return filed"); Ex. 6 ("No tax return filed").

       6.       Plaintiff claims that, separately from her husband, she also requested an extension of time to file her 2012 federal income tax return. Ex. 8, Response to Interrogatory #3. But unlike for Mr. Huff-Rousselle, no extension is reflected on Ms. Huff-Rousselle's IRS transcripts for the 2012 income tax year. *See* Exs. 1-3. Plaintiff does not have a copy of her alleged extension request. Ex. 9, Response to Request for Production #2.

       7.       On October 15, 2016, plaintiff mailed a Form 1040X (Amended U.S. Individual Income Tax Return) that she intended to serve as the joint federal income tax return for both her and her late husband for the 2012 year. Ex. 10, Form 1040X; Ex. 11, Postmark.[4] The IRS received the Form 1040X on a date after October 15, 2016. *See* Ex. 10 (various "Received" stamps on Form 1040X); Exs. 2 and 3 (both reflecting "Amended Return Filed" on "11-15-16").

---

also clarified in discovery that her claim is that she separately sent in her own extension request form, not that she was entitled to an extension based on her husband's form. *See* Facts ¶ 6, *infra*.

[4] The PDF file containing the postmark that Ms. Huff-Rousselle produced in discovery does not prove that the postmark is associated with the Form 1040X or the envelope in which it was mailed. But an October 15, 2016 mailing date for the Form 1040X is plausible, given that the return was signed as of that date—presumably under the mistaken belief that it would be a timely election to file jointly had she filed a request to extend the time to file the original return—and received by the IRS shortly thereafter. The United States does not have contrary evidence and therefore admits, for purposes of this summary judgment motion, that the Form 1040X was mailed on October 15, 2016. The mailing date is immaterial to the outcome of this motion, however, as explained below.

8. The plaintiff signed the Form 1040X on behalf of her deceased husband as his surviving spouse. Ex. 10 (page 3 of 14).

9. Mr. Huff-Rousselle's will named Karl Schramek as the "personal representative (executor)" of his estate. Ex. 12, Will ("TENTH" clause, top of page 2); *see also* Ex. 8, Response to Interrogatory #1. Although Mr. Schramek, who is a CPA and the plaintiff's son (Doc. 25 at 2), signed the Form 1040X as the preparer, he did not sign the Form 1040X in his capacity as the executor of Mr. Huff-Rousselle's estate. Ex. 10 (page 3 of 14).

10. The Form 1040X claimed a refund of $7,147. Ex. 10 (page 1 of 14, line 21).

11. The IRS denied the refund claim in a letter dated February 17, 2017. Ex. 13.

12. On February 15, 2019, plaintiff commenced this civil action seeking a refund of the alleged $7,147 overpayment for the 2012 income tax year. Doc. 1.

**II.     Law and Argument**

For a taxpayer to maintain a civil action for tax refund, the taxpayer must first make an administrative claim for refund that is "duly filed" with the IRS. 26 U.S.C. § 7422(a); *see Muskat v. United States*, 554 F.3d 183, 194 (1st Cir. 2009) ("a district court has jurisdiction to adjudicate only those refund claims that have first been 'duly filed' with the Secretary of the Treasury."). An administrative claim for refund can sometimes be made on a Form 1040X, Amended U.S. Individual Income Tax Return, *see* 26 C.F.R. § 301.6402-3(a)(5), and plaintiff's Form 1040X is the only potentially valid claim for refund at issue here. Plaintiff submitted a Form 1040X to the IRS for the 2012 income tax year, purporting to change filing status from "married filing separately" to "married filing jointly," and claiming the right to a refund of $7,147. But the Form 1040X was not "duly filed" because it failed to comply with the applicable rules in 26 U.S.C. § 6013(b). As a result, the Court lacks jurisdiction to consider plaintiff's refund claim and this action must be dismissed. This brief will proceed, first, by showing that § 6013(b) is applicable

4

to the facts of this case, and second, by explaining why plaintiff's Form 1040X runs afoul of the statutory requirements.

      **A.**      **Section 6013(b) Applies**

A threshold issue is whether § 6013(b) applies to this case's facts. The United States' case rests on the premise that it does, but the Court questioned this premise in its prior Memorandum and Order of August 11, 2020 (Doc. 27) ["8/11/2020 Decision"]. We address the Court's concerns now.

Section 6013, captioned "Joint returns of income tax by husband and wife," sets forth the circumstances in which joint returns are allowed. Subsection 6013(b), "Joint return after filing separate return," provides that, "if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse . . . and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year." § 6013(b)(1). But this is subject to certain restrictions set forth in § 6013(b), two of which are pertinent here.

First, "[t]he election provided for in [§ 6013(b)(1)] may not be made—(A) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse)[.]" § 6013(b)(2). Three years from the last date prescribed by law for filing plaintiff's 2012 federal income tax return was April 15, 2016. *See* 26 U.S.C. § 6072(a) (establishing April 15 of the following calendar year as the individual income tax return deadline). As argued below, because the Form 1040X at issue here that was not "filed" with the IRS until November 2016 (even if mailed on October 15, 2016), plaintiff's attempt to change to a joint filing status, and the refund claim that went along with that, came too late. And even if the Form 1040X is deemed filed on

October 15, 2016, it was still six months too late.[5]

Second, "[i]f a joint return is made under this subsection [§ 6013(b)] after the death of either spouse, such return with respect to the decedent can be made only by his executor or administrator." § 6013(b)(1) (last sentence). Because plaintiff submitted the Form 1040X in late 2016, after the death of her husband in June 2015, and the Form 1040X was not signed by Mr. Schramek in his capacity as executor of Mr. Huff-Rousselle's estate, it was not a valid joint return. As discussed below, a surviving spouse may sign for a deceased spouse under certain limited circumstances, *see* § 6013(a)(3), but those circumstances do not obtain here.

In the 8/11/2020 Decision, the Court suggested (at pages 9-11) that "unique facts" in this case are a "contrast to those cases where a husband and wife both choose to file separate returns and then later change that election to reduce their tax liability," speculating that § 6013(b) may only apply where spouses file a joint return after *both* spouses previously filed separate returns.[6] But that would contradict the plain text of § 6013(b)(1), which straightforwardly uses the singular in stating that it applies to "an individual" who previously filed "a separate return," and

---

[5] The 8/11/2020 Decision questioned whether plaintiff should benefit from the mailbox rule in 26 U.S.C. § 7502(a)(1), which would make the filing date October 15, 2016. Doc. 27 at 2 n.2. But the mailbox rule does not apply when a taxpayer does not mail the purported return until after the filing deadline, which is what occurred in this case. See § 7502(a)(2)(A) (mailbox rule in § 7502(a)(1) "shall apply only if . . . the postmark date falls within the prescribed period" for the filing). Rather, when the taxpayer mails an IRS form after the return filing deadline has already passed, the filing date is the date on which the IRS receives the mail. *See In re Harrison*, 226 B.R. 285, 287 (D. Mass. 1997). To be clear, this is all irrelevant because an October 15, 2016 filing date would have been six months late anyway, as argued below.

[6] The 8/11/2020 Decision suggested that, "the text of the relevant statutes and the legislative history" support this view, Doc. 27 at 10, but the materials cited by the Court (*id*. at 10-11) do not do that. The cited materials do refer to "taxpayers" or "returns" as being governed by § 6013(b), but only in the sense that § 6013(b) is the law that governs U.S. taxpayers generally— not in the sense that there must be two "taxpayers" who are married to each other, both of whom previously filed separate "returns," for the statute to apply at all.

not merely to pairs of spouses who each did so. *See* § 6013(b)(1) (if *an individual* has filed *a separate return* for a taxable year for which a joint return could have been made by him and his spouse . . . ." (italics added)). Indeed, § 6013(b) expressly addresses, for purposes of ascertaining the impact on the statute of limitations and certain late-filing penalties, the scenario "[w]here only one spouse filed a separate return prior to the making of the joint return." § 6013(b)(3)(A)(ii) and (iii); *see also* 26 C.F.R. § 1.6013-2(c) ("a joint return made under section 6013(b) shall be deemed to have been filed . . . (iii) Where both spouses were required to file a return, but only one spouse did so file, on the date of the filing of the joint return under section 6013(b)."). An interpretation of § 6013(b) as not applying where one spouse filed a prior separate return and the other did not file a return would render this portion of the statute a nullity, thus violating a fundamental rule of statutory construction. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 174 (2001) (describing courts' "duty to give effect, if possible, to every clause and word of a statute" (quotation omitted)).

At least two courts have previously held that § 6013(b) applies to the fact pattern where one spouse previously filed a separate return but the other did not. In *Lytle v. United States*, No. C2-90-019, 1990 WL 120647 (S.D. Ohio July 13, 1990), taxpayer-plaintiffs Robert and Tara Lytle brought a tax refund action based on Forms 1040X that they had filed for 1981-83 claiming joint filing status. The opinion says that, "Mrs. Lytle had not filed income tax returns for those years and Mr. Lytle had filed as 'married filing separately.'" *Id*. at *1. The government sought dismissal based on the three-year rule in § 6013(b), and the Lytles responded that § 6013(b) did not apply because Mrs. Lytle had not previously filed any return at all. Finding the Lytles' argument "deficient as a matter of law," the court rejected the contention that the statute is inapplicable if only one spouse filed separately, writing:

> Clearly, § 6013(b) applies to Mr. Lytle because he filed a separate return. . . . Mrs.

7

> Lytle cannot now avail herself of § 6013(b)(1) to elect to file jointly because she never filed a timely return in the first instance. . . . Therefore, her ability to file a joint return now is dependent upon her husband's compliance with § 6013(b), which did not occur. . . . As pointed out by the defendant, to allow plaintiffs to circumvent § 6013(b)(2) by virtue of Mrs. Lytle filing a joint return would "lead to the anomalous result of placing a married couple in which both spouses file separate returns at a disadvantage relative to a married couple where one spouse files no return at all."

1990 WL 120647 at *1.

The Tax Court made a similar ruling in *Reather v. Comm'r*, T.C. Memo. 1983-233, 1983 WL 14212 (Apr. 28, 1983), finding that taxpayer William Reather was not entitled to joint filing status with his wife Beverly on the premise that only he, but not she, had filed a separate return, and explaining as follows:

> William filed a separate return for the 1975 taxable year. William admits that he and Beverly first requested joint return status for 1975 more than three years after April 15, 1976, the last date permitted by law for the filing of their 1975 return. William argues, however, that since Beverly filed no return for 1975, her November 1979, election to file a joint return was an election to file a joint return for the first time. . . .
>
> Petitioner's argument is ingenious, but unfortunately for him it cannot be reconciled with the statute. . . . The language of section 6013(b)(1) covers precisely the situation before us—an individual, William, filed a separate return for a year for which a joint return could have been filed, and that individual and his spouse subsequently wished to make a joint return for such taxable year. . . . Since William and Beverly failed to elect joint return filing status for 1975 within the time prescribed by section 6013(b)(2)(B)[7], we hold that their November 1979 election of joint filing status was ineffective.

*Id*.

In this same vein, the 8/11/2020 Decision addressing the previous summary judgment motion anticipated that, "the government may argue that Peter Huff-Rousselle's proposed 2012 joint return fails for the fact that it is a joint return with Margaret Huff-Rousselle subject to the limitations

---

[7] The statute has since been amended so that the three-year rule is now § 6013(b)(2)(A).

under § 6013," but the Court chose not to address the argument because it was not included in the government's prior summary judgment briefing. The government makes precisely this argument now, based on the plain language of the statute as confirmed by the reasoning in *Lytle* and *Reather*. The essential point is that for a joint return to be valid, both spouses must be eligible to submit the joint return; it takes two to tango, so to speak. But by the time that the Form 1040X was submitted in this case, Ms. Huff-Rousselle was time-barred from making a joint return because she had filed a separate return and the three-year deadline from the *original* due date was thereby triggered. For that reason the Form 1040X is not a valid joint return.

Two other cases raised in the 8/11/2020 Decision, *Ibrahim v. Comm'r*., 788 F.3d 834 (8th Cir. 2015), and *Glaze v. United States*, 641 F.2d 339 (5th Cir. 1981), are not to the contrary. *See* Doc. 27 at 9-10. *Ibrahim* held that § 6013(b) did not apply where one spouse previously filed a return claiming "head of household" status. 788 F.3d at 836 ("The issue is whether a 'separate return' as used in 6013(b)(1) includes a head-of-household return."). *Glaze* held that § 6013(b) did not apply where one spouse previously filed a return claiming "single" status. *See* 641 F.2d at 342 ("Section 6013 was never intended to cover situations such as the one presented here where a taxpayer erroneously lists his status as single rather than married [filing separately]."). Neither case ruled on the issue presented here, *i.e.*, whether § 6013(b) applies when one spouse previously filed a return claiming "married filing separately" status. *See also Camara v. Comm'r*, 149 T.C. 317, 324 (2017) ("'separate return'" in § 6013(b)(1) "means a return on which a married taxpayer has claimed the permissible status of married filing separately").

In fact, the Eight Circuit wrote in *Ibrahim* that, "Section 6013(b)(2) applies only after the taxpayer first files as married filing separately and then amends his or her initial election to married filing jointly." 788 F.3d at 839. That is exactly what the plaintiff did here. In this respect, *Ibrahim* agreed with *Glaze*, which stated that § 6013(b) "is applicable only to the

situation where a married taxpayer has made an election to file a separate (not 'single') return and later decides that he/she wants to revoke that choice." 641 F.2d at 342. While the government would, in a case where the facts presented the issue, likely dispute that § 6013(b)(2) is "only" applicable where a taxpayer previously filed a return claiming "married filing separately" status, and not to other situations, that is an issue that is not presented by the case now before the Court. It need not be decided here and should be reserved for another day.[8] All that matters for present purposes is that the government in this case, the Eighth Circuit opinion in *Ibrahim*, and the Fifth Circuit's opinion in *Glaze* all agree that § 6013(b) applies when a taxpayer previously filed a return selecting the filing status of "married filing separately."

### B. The Form 1040X Did Not Comply with § 6013(b)

We turn now to an application of § 6013(b) to the facts of this case. As noted above, plaintiff's refund claim, made on Form 1040X, was not "duly filed" within the meaning of § 7422(a), both because she mailed it at least six months after April 15, 2016, in violation of § 6013(b)(2)(A), and because the Form 1040X was not signed by Mr. Schramek in his capacity as executor of Mr. Huff-Rousselle's estate, in violation of the last sentence of § 6013(b)(1). We address these points sequentially below.

---

[8] Notably, § 6013(b)(1) does not refer to where a return was previously filed selecting "married filing separately"; instead to where an individual has filed a "separate return for a taxable year for which a joint return could have been filed," and that logically includes any individual return other than a joint return. IRS Revenue Ruling 83-183, 1983-2 C.B. 220, states that the IRS "will not follow the holding in *Glaze v. United States*" and that "[t]axpayers may not file joint returns more than 3 years after the due date of the return if one of the spouses has filed a return claiming unmarried, head of household, or married filing separately filing status." Although the government's argument based on this revenue ruling lost in *Ibrahim*, the revenue ruling has not been rescinded. It therefore appears that the government would advance the arguments contained in the revenue ruling, and contend that *Glaze* and *Ibrahim* were wrongly decided, in a future case outside of the Fifth, Eighth or Eleventh Circuits (*Glaze* is binding authority in the Eleventh Circuit). *See* IRS Chief Counsel Notice 2006-010, https://www.irs.gov/pub/irs-ccdm/cc-2006-010.pdf. But *Glaze* and *Ibrahim* simply do not support the plaintiff's position here.

### 1.     Plaintiff's Amended Return Was Too Late to Change Filing Status

The application of § 6013(b)(2)(A)'s three-year time limit in this matter is straightforward. The 2012 federal income tax return was originally due to be filed by April 15, 2013. § 6072(a). That means the deadline by which a spouse who previously filed a separate return for the 2012 tax year could change to joint filing status was April 15, 2016, which was "3 years from the last date prescribed by law for filing the return for such taxable year." § 6013(b)(2)(A). The Form 1040X in this case was not submitted to the IRS until at least six months later. Plaintiff's refund claim that was dependent upon joint filing status was thus invalid, and she cannot maintain this refund suit.

The statute says this three-year deadline cannot be extended because it is "determined without regard to any extension of time granted to either spouse." *Id.* Therefore, it is irrelevant whether the extension of time that the IRS granted to Mr. Huff-Rousselle to file his 2012 income tax return served also to extend the time for Ms. Huff-Rousselle to file her return (the record indicates that it did not, *see* Facts ¶¶ 3, 6). It is also irrelevant whether Ms. Huff-Rousselle was, in her own right, entitled to such an extension (IRS records do not reflect any extension request by her, *see* Facts ¶ 6).[9] These factual questions, while perhaps disputed, are immaterial to applying the unbendable deadline in § 6013(b)(2)(A) and should not affect the summary judgment analysis.

Nor can the three-year rule of § 6013(b)(2)(A) be overridden by 26 U.S.C. § 6511. To be sure, the so-called look-back period in § 6511(b)(2)(A) allows a taxpayer who makes a valid

---

[9] In the event the Court finds this to be material, we note the IRS Form 4340 that does not reflect any extension of time to file for Ms. Huff-Rousselle (Ex. 2) is presumptively correct. *See Ebeyer v. United States*, 114 Fed. Cl. 538, 546-47 (2014) (Form 4340 that did not show extension of time to file gave rise to presumption that taxpayer did not request extension).

refund claim to recover payments made during the preceding "3 years plus the period of any extension of time for filing the return." Absent § 6013(b), this language in § 6511 would entitle plaintiff to recover payments made as far back as April 15, 2013 (when her husband paid $20,000 that appears to include the amount she is seeking to be refunded), if we assume both [a] that the claim is deemed filed on October 15, 2016 (rather than in November when the IRS received it), and [b] that plaintiff was entitled to the six-month extension of time for filing her 2012 income tax return. But a fundamental prerequisite to the application of this look-back rule in § 6511 is that the taxpayer must make a valid refund claim in the first place. Plaintiff did not do that here because she was not able to change her filing status to married filing jointly after April 15, 2016. For purposes of comparison, if plaintiff were allowed the six-month extension, and then on October 15, 2016, plaintiff had filed a Form 1040X without altering her filing status but instead claiming an additional overlooked tax deduction, § 6511 might allow a refund.

Additionally, the potential financial disability of Mr. Huff-Rousselle under § 6511(h)—an issue plaintiff has raised without offering evidentiary support—would not extend the three-year period under § 6013(b) in any event. Section 6511(h) by its terms is limited to possibly extending the periods in § 6511(a), (b), and (c). *See Lee v. Shulman*, No. 12-2529, 2013 WL 1773615 at *4 (W.D. Tenn. Apr. 5, 2013) (§ 6511(h) "does not apply to the three-year limitations period in 26 U.S.C. § 6013(b)(2)(A) for changing filing status.").

Relatedly, one more concern that the Court expressed in the 8/11/2020 Decision was Ms. Huff-Rousselle's contention that she was "forced" to file a separate return due to Mr. Huff-Rousselle's medical condition. Doc. 27 at 10. Even if we assume that this is true for purposes of the summary judgment motion, it does not excuse Ms. Huff-Rousselle's delay of more than one year from the time of Mr. Huff-Rousselle's death on June 24, 2015, to the time that she submitted the Form 1040X in late 2016. As discussed in the next section, the executor for Mr.

Huff-Rousselle's estate would have had to co-sign the Form 1040X in that capacity. But Ms. Huff-Rousselle has not offered any explanation for why she could not have arranged for her CPA son, Mr. Schramek, who also served as Mr. Huff-Rousselle's executor, to sign the Form 1040X in his capacity as executor and file it on or before April 15, 2016. Plaintiff seems to have simply overlooked the requirements of § 6013(b), and as a result her refund claim fails.

In sum, plaintiff's Form 1040X was not "duly filed" with the IRS because it impermissibly attempted to change filing status from married filing separately to joint when that was no longer possible, and as a result the Court should dismiss for lack of jurisdiction. *See Marshall v. Comm'r.*, T.C. Memo. 1976-34 (Feb. 9, 1976) ("no joint return was duly filed" because none was made within the three-year period in § 6013(b)).

### 2. The Form 1040X Was Invalid Because It Lacked the Executor's Signature

A separate reason why this case should be dismissed is that the Form 1040X lacked the signature of Mr. Huff-Rousselle's executor, as required by the last sentence of § 6013(b)(1). To reiterate, that sentence reads: "If a joint return is made under this subsection [meaning § 6013(b)] after the death of either spouse, such return with respect to the decedent can be made only by his executor or administrator." Although § 6013(a)(3) states that a surviving spouse may sometimes file a joint return on behalf of the decedent in certain cases, that does not apply to returns made under § 6013(b), which must be filed by the executor, as stated in § 6013(b)(1).

The Form 1040X at issue in this case was "made under this subsection" because § 6013(b) applies to the facts at bar, as explained in Section II.A, above. The Form 1040X, although signed by Mr. Schramek in his capacity as the return preparer, is not signed by Mr. Schramek as executor of Mr. Huff-Rousselle's estate. Therefore, the Form 1040X is not a valid joint return, making the refund claim also invalid and requiring dismissal of this lawsuit. While this point may strike the Court as a mere technicality, as stated by Justice Holmes long ago,

13

taxpayers "must turn square corners when they deal with the Government." *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920) (application for abatement was technically not a claim for refund and thus no timely refund claim had been filed).

### III.     Conclusion

For the foregoing reasons, the defendant United States of America's motion for summary judgment should be granted.

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
U.S. Department of Justice, Tax Division

/s/ Edward J. Murphy
EDWARD J. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
Tel: (202) 307-6064 / Fax: (202) 514-5238
Email: Edward.J.Murphy@usdoj.gov

CERTIFICATE OF SERVICE

    I certify that on March 10, 2020, I served the foregoing *Memorandum in Support of Defendant United States' Second Motion for Summary Judgment* by both U.S. mail and email to the following:

Margaret Ann Huff-Rousselle
50 Commonwealth Avenue, #905
Boston, MA 02116-3095
mhuffrousselle@gmail.com

                                            */s/ Edward J. Murphy*
                                            EDWARD J. MURPHY
                                            Trial Attorney, Tax Division
                                            U.S. Department of Justice