UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |  |
|---|---|---|
| MARGARET ANN HUFF-ROUSSELLE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:19-cv-10293-IT |
| | * | |
| UNITED STATES, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

September 16, 2021

**TALWANI, D.J.**

Plaintiff Margaret Huff-Rousselle seeks a refund of approximately $7,000 in overpaid taxes that her late husband, Peter Huff-Rousselle, paid towards his 2012 federal tax return. The court denied the government's first Motion for Summary Judgment [#23], finding disputes of material fact resulting from the government's incomplete presentation of the evidentiary record and undeveloped legal arguments. See Mem. & Order [#27]. Following this ruling, the parties engaged in limited written discovery and the government has now renewed its motion, arguing that the IRS properly denied Margaret Huff-Rousselle's refund claim. See Def.'s Second Mot. Summ. J. [#39]. With the benefit of the more complete evidentiary record and the government's briefing on the issues of law raised in the court's earlier order, the court finds that Margaret Huff-Rousselle's refund claim sought to change her election status from married filed separately to married filed jointly outside of the three-year period provided by Congress for changes of election status, and was therefore properly denied. Accordingly, the United States' Second Motion for Summary Judgment [#39] is GRANTED.

**I.   FACTUAL BACKGROUND**

The background facts are, for the most part, undisputed for the purposes of the summary judgment proceedings, or where disputed, the dispute is not material. On April 15, 2013, Peter Huff-Rousselle requested an extension of time to file his tax return and paid an estimated tax payment of $20,000 for the 2012 tax year. Gov't's Ex. 4 [#40-4] (Check and Form 4868 ("Application for Extension of Time to File Individual Income Tax Return")). His request did not include Margaret Huff-Rousselle's name or social security number. Id.

Margaret Huff-Rousselle avers that she filed her own Form 4868 application for an automatic six-month extension for the 2012 tax years. Gov't's Ex. 8 [#40-8] (Pl.'s Response to Interrogatory #3). The government's tax records for Margaret Huff-Rousselle do not include an extension request, see Gov't's Exs. 1–3 [#40-1] [#40-2] [#40-3] (Pl.'s Tax Records), and Plaintiff has not retained a copy of her extension request, see Gov't's Ex. 9 [#40-9] (Pl.'s Resp. to Request for Production #2). As discussed further below, the dispute as to whether Margaret Huff-Rousselle filed the Form 4868 for 2012 (extending her 2012 return deadline to October 15, 2013) is ultimately not material to the analysis. On November 12, 2014, nineteen months after the April 2013 deadline for the return, Margaret Huff-Rousselle filed her 2012 tax return with a status of married filing separately. Gov't's Ex. 1 [#40-1] (2012 Tax Return Transcript listing "Filing Status" as "Married Filing Separate"). Margaret Huff-Rousselle has explained that she made this election in part because of her husband's medical condition. See Pl.'s Resp. 2 [#25].

Peter Huff-Rousselle passed away on June 24, 2015, without having filed a tax return for the 2012 tax year. See Gov't's Ex. 7 [#40-7] (Death Certificate); Gov't's Exs. 5–6 [#40-5] [#40-6] (certified records showing no record of a tax return filed).

On October 15, 2016, Margaret Huff-Rousselle mailed the IRS a Form 1040X ("Amended U.S. Individual Income Tax Return"). Gov't's Ex. 10 [#40-10] (Form 1040X); Gov't's Ex. 11 [#40-11] (Postmark).[1] This amended return was filled out as a joint return for both Peter and Margaret Huff-Rousselle, with the filing status of "married filing jointly." Gov't's Ex. 10 at 1, 3 [#40-10]. The amended return stated a 2012 tax liability of $45,106 for the Huff-Rousselles, as a couple, against $52,253 in payments (which included estimated payments made by Peter Huff-Rousselle with his 2012 Form 4868 and credits on his account from prior years' overpayments). Id. at 1, lines 12, 15. The proposed amended return requested a refund of the difference: $7,147. Id. at 1, line 21.

While Margaret Huff-Rousselle signed the Form 1040X for herself, id. at 3, there is some ambiguity as to who signed for Peter Huff-Rousselle. Where the form requested the spouse's signature, Margaret Huff Rousselle included a remark that she was "filing as surviving spouse." Id. However, the form was prepared by Karl Schramek, CPA, who was also the Huff-Rousselles' son and the executor of Peter Huff-Rousselle's estate. Pl.'s Resp. 2 [#25]; Gov't's Ex. 12 at 2 [#40-12] (Peter Huff-Rousselle's Will); see also Gov't's Ex. 8 [#40-8] (Pl.'s Response to Interrogatory #1). However, Karl Schramek only signed the document as the document's preparer and did not sign as Peter Huff-Rousselle's representative. Id. at 3.

On February 17, 2017, the IRS denied the refund claim, asserting that 26 U.S.C. § 6013(b)(2)(A) does not allow amended returns based on a married couple's change of election of filing status to be filed three or more years after the original due date. Gov't's Ex. 13 [#40-13] (IRS administrative denial of claim for refund).

---

[1] There has been some dispute as the mailing date of the Form 1040X and whether the controlling date is the mailing date or the filing date. However, for the purposes of this motion, the government admits that the Form 1040X was mailed on October 15, 2016, and that the form can be treated as filed on the date it was mailed. See Gov't's Mem. 3 n.4, 6 n.5 [#40].

Margaret Huff-Rousselle then filed a timely *pro se* complaint in this court on February 15, 2019, requesting a "full refund" of the $7,147 balance on her and her husband's proposed 2012 amended return. Compl. ¶ 7 [#1]. Plaintiff's complaint states that her husband's declining health prior to his death should suspend the statute of limitations for filing the amended return. Id. ¶¶ 5–6.[2]

## II. APPLICABLE STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012) (quoting Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009)). "A fact is 'material' if it has the potential of determining the outcome of the litigation." Id.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). In so doing, the court properly "give[s] no heed to speculative, unsupported, or unreasonable conclusions." Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 69 (1st Cir. 2014).

---

[2] While Plaintiff has not submitted evidence regarding Peter Huff-Rousselle's health in the time preceding his death and whether his health impaired his or Ms. Huff-Rousselle's ability to submit their return(s), these facts are ultimately not material, as set forth further below.

**III.   STATUTORY SCHEME[3]**

There are two interacting provisions of the Internal Revenue Code (Title 26 of the U.S. Code) at play in this case. Section 6511, entitled "Limitations on credit or refund," sets forth deadlines and limits for obtaining a refund of any overpayment of tax (through the filing of a refund claim, here the Form 1040X).[4] Section 6013(b) of the Internal Revenue Code, meanwhile, is the provision that provides married couples the ability to file a single joint return after having filed separate return(s) and sets certain conditions for those filings. As discussed further below, in its Second Motion for Summary Judgment [#39], the government argues that, regardless of whether Margaret Huff-Rousselle's *claim for a refund* was timely under Section 6511, her *change of status* was untimely under Section 6013(b) as it occurred more than three years after the date her 2012 return was due. See Gov't's Mem. 4–10 [#40]. The court briefly reviews the statutory scheme below, starting with Section 6511 before turning to Section 6013(b).

   **a.  Internal Revenue Code Section 6511**

Section 6511 sets forth two limitations on a claim for a refund of a tax overpayment. The first is a "filing" deadline, contained in Section 6511(a), which provides that refund claims must be filed within three years from when the return was filed or two years from the time the tax was paid, whichever of such periods expires later. The second limitation, contained in Section 6511(b), imposes a restriction commonly referred to as a "lookback period." The term of the lookback period is a function of when the refund claim was filed and whether an extension of the filing deadline was obtained. If the claim was filed within three years from when the return was

---

[3] The court adopts this discussion of the statutory scheme in large part from the court's discussion of the statutory scheme set forth in its earlier Memorandum and Order [#27].

[4] Margaret Huff-Rousselle's Form 1040X constitutes an administrative claim for refund under IRS regulations. See Treas. Reg. § 301.6402–3(a)(2) ("In the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X ('Amended U.S. Individual Income Tax Return').").

filed, then "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." § 6511(b)(2)(A). If the claim was not filed within this three-year period, then "the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." § 6511(b)(2)(B).[5]

In United States v. Brockamp, 519 U.S. 347, 354 (1997), the Supreme Court held that a prior version of Section 6511 was *not* subject to equitable tolling. The following year, Congress amended the statute, providing in Section 6511(h) that the deadlines for filing refund claims, and the lookback periods governing what payments may be refunded, are subject to being suspended during any period in the taxpayer's life that the individual is "financially disabled." Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3202, 112 Stat.

---

[5] In full, Section 6511(b) provides:

> Limitation on allowance of credits and refunds.
> (1) Filing of claim within prescribed period.
> No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.
> (2) Limit on amount of credit or refund.
>     (A) Limit where claim filed within 3-year period.
>     If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.
>     (B) Limit where claim not filed within 3-year period.
>     If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.
>     (C) Limit if no claim filed.
>     If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

685, 740 (1998). The tolling provision in Section 6511(h) is narrow in scope as it suspends the deadlines under only Section 6511(a), (b), and (c), see § 6511(h)(1), and only where the individual was "unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," § 6511(h)(2)(A). Congress further provided that to be granted status of financial disability, proof of impairment must be "furnished in such form and manner as the Secretary may require." Id. The Secretary has promulgated those conditions for proving impairment in Revenue Procedure 99-21.

### b. Internal Revenue Code Section 6013(b)

In 1958, Congress enacted Section 6013(b) of the Internal Revenue Code "to allow taxpayers to switch to a joint return after initially electing to file as married filing separately—either of which are proper elections. The purpose of allowing this switch was to relieve taxpayers from overpaying their taxes due to an improvident initial election between these two filing statuses." Ibrahim v. Comm'r, 788 F.3d 834, 839 (8th Cir. 2015) (citing S. Rep. No. 82-781, 2018–19). This displaced the previous rule that once a status was elected, it was binding on the taxpayer for that taxable year. Id.

Congress placed a limitation requiring that amendments to filing status to be made no later than "3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse)." § 6013(b)(2)(A). Section 6013(b), unlike Section 6511, does not contain a tolling provision and does not extend the three-year deadline to reflect any extensions to file obtained by the taxpayer.

Section 6013 addresses cases where one of the spouses died prior to when the joint return was filed. Section 6013(a)—the overarching provision authorizing a married couple to file a single joint return—provides that a surviving spouse may file a joint return "with respect to both himself and the decedent if no return for the taxable year has been made by the decedent, no executor or administrator has been appointed, and no executor or administrator is appointed before the last day prescribed by law for filing the return of the surviving spouse." § 6013(a)(3).[6] However, Section 6013(b)(1)—which concerns taxpayers changing elections from a separate return to a joint return (the relevant provision here)—requires that the joint return "with respect to the decedent can be made only by his executor or administrator."[7]

---

[6] Section 6013(a)(3) provides:

> Joint returns
> A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:
>
> . . . .
>
> (3) in the case of death of one spouse or both spouses the joint return with respect to the decedent may be made only by his executor or administrator; except that in the case of the death of one spouse the joint return may be made by the surviving spouse with respect to both himself and the decedent if no return for the taxable year has been made by the decedent, no executor or administrator has been appointed, and no executor or administrator is appointed before the last day prescribed by law for filing the return of the surviving spouse. If an executor or administrator of the decedent is appointed after the making of the joint return by the surviving spouse, the executor or administrator may disaffirm such joint return by making, within 1 year after the last day prescribed by law for filing the return of the surviving spouse, a separate return for the taxable year of the decedent with respect to which the joint return was made, in which case the return made by the survivor shall constitute his separate return.

[7] Section 6013(b)(1) provides:

> Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. A joint return filed by the husband and wife under this subsection shall constitute the return of the husband and wife for

8

## IV. DISCUSSION

Under this statutory scheme, Margaret Huff-Rousselle's claim for refund is governed by two separate limitations periods. The time for filing her claim for refund as a general matter is subject to the limitations for refund claims set forth in Section 6511 and her time for changing her election status from a married filed separately to married filed jointly is prescribed by the limitations provision Section 6013(b)(2). These two limitation periods operate independently, and it is possible, as here, to be within the limitations period for one and without the limitations period for the other.

In its Second Motion for Summary Judgment [#39], the government focuses on Section 6013(b)(2)(A), contending that Margaret Huff-Rousselle's Form 1040X improperly sought to change her 2012 filing status to a joint return more than three years after the deadline to file the return. Gov't's Mem. 4 [#40].[8] Namely, because the 2012 return was due April 15, 2013, the

---

such taxable year, and all payments, credits, refunds, or other repayments made or allowed with respect to the separate return of either spouse for such taxable year shall be taken into account in determining the extent to which the tax based upon the joint return has been paid. If a joint return is made under this subsection, any election (other than the election to file a separate return) made by either spouse in his separate return for such taxable year with respect to the treatment of any income, deduction, or credit of such spouse shall not be changed in the making of the joint return where such election would have been irrevocable if the joint return had not been made. If a joint return is made under this subsection after the death of either spouse, such return with respect to the decedent can be made only by his executor or administrator.

[8] The government also argues that the Form 1040X was not "duly filed" because it did not provide the executor's signature. Gov't's Mem. 13–14 [#40]. Pursuant to Section 6013(b)(1), "[i]f a joint return is made under this subsection after the death of either spouse, such return with respect to the decedent can be made only by his executor or administrator." The government argues that "[t]he Form 1040X, although signed by Mr. Schramek in his capacity as the return preparer, is not signed by Mr. Schramek as executor of Mr. Huff-Rousselle's estate." Gov't's Mem. 13 [#40]. The government's argument essentially contends that Mr. Schramek, a CPA, prepared and signed a form purporting to be a return for Peter Huff-Rousselle that did not include the assent of Peter Huff-Rousselle's estate (which he administered). This argument is not persuasive as a matter of fact or as a matter of law. See Hennen v. Commissioner, 35 T.C. 747,

9

government argues the time to change her election status expired on April 15, 2016, making the October 15, 2016 Form 1040X filed 6 months too late. Because the three-year period under Section 6013(b)(2)(A) (in contrast to the three-year period under Section 6511) is without regard to any extensions of time granted by the IRS to file the original return, the government argues that Margaret Huff-Rousselle's assertion that she obtained a 6-month extension to file her 2012 return is ultimately immaterial.

While the government raised its Section 6013(b)(2)(A) argument in its First Motion for Summary Judgment [#23], the court declined (at that time) to grant judgment for the government because of several underdeveloped issues of law and fact. Having considered the government's supplemental briefing (and Margaret Huff-Rousselle's responses), the court now concludes that the IRS properly applied the Internal Revenue Code when it denied Margaret Huff-Rousselle's refund claim as an untimely change of status under Section 6013(b)(2)(A).

First, the court finds that the limitations in Section 6013(b)(2) apply to Margaret Huff-Rousselle even though Peter-Huff Rousselle never filed a 2012 return (and thus never made an election as to his filing status). Although the case law and the legislative history suggest that Section 6013(b) was primarily aimed at those cases where *both* spouses previously elected to file separate returns, Congress did not narrow the reach of Section 6013(b) to reach only these cases. This is evidenced by Section 6013(b)'s repeated use of the singular "return" when referencing the previously filed separate return(s). Moreover, Congress expressly contemplated those cases where only one spouse filed a separate return in its provisions setting forth the date a joint return should be deemed to have been filed, which depends on whether "both spouses filed separate returns prior to making the joint return," § 6013(b)(3)(A)(i), or "only one spouse filed a separate

---

748 (1961) ("The determinative factor is whether the spouses intended to file a joint return, their signatures being but indicative of such intent.").

return prior to the making of the joint return," § 6013(b)(3)(A)(ii)–(iii). This construction of the statute is also concordant with caselaw cited by the government. See Gov't's Mem. 8 [#40] (citing Lytle v. United States, No. C2-90-019, 1990 WL 120647 (S.D. Ohio July 13, 1990) (finding that a taxpayer may not avail herself of Section 6013(b)(1) in order to file joint return where she never filed a return in the first place and that her husband, who did file a return, would have to comply with Section 6013(b)(2)'s limitations in order to properly file a joint return); Reather v. Comm'r, T.C. Memo. 1983-233, 1983 WL 14212 (Apr. 28, 1983) (finding that a husband, who did previously file a separate return, could not avoid the three-year limitation because his wife did not file a return)).[9]

Second, Margaret Huff-Rousselle may not be excused from the three-year limitations period in Section 6013(b)(2)(A) because of her husband's medical condition. Although Margaret Huff-Rousselle does not articulate her argument as a request for the court to equitably toll the three-year period, this is, in effect, the substance of what she seeks. However, for the same reasons that the Supreme Court concluded in United States v. Brockamp, 519 U.S. 347, 354 (1997), that the three-year period in Section 6511 (before Congress amended it) was not subject to equitable tolling, equitable tolling is also not available for the three-year provision in Section 6013(b)(2)(A). As with the provision at issue in Brockamp, Section 6013(b)(2) "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." Id. at 350.[10] Furthermore, just as with the

---

[9] Importantly, if Margaret Huff-Rousselle's specific factual circumstances somehow fall outside the scope of Section 6013(b) (and therefore its limitations), she would still be barred from any relief as Section 6013(b) is the only provision that allows taxpayers to amend their separate return to a joint return, and Margaret Huff-Rousselle's Form 1040X, which sought to change her filing status, would be without any statutory authority.

[10] Indeed, the limitations period in Section 6013(b)(2) is more unforgiving than the period provided in Section 6511 even before its amendment. While the three-year period under Section

11

provision at issue in Brockamp, "the nature of the underlying subject matter—tax collection—underscores the linguistic point." Id. at 352. That is, due to the number of tax returns processed each year, to read an equitable tolling exception into Section 6013(b)(2) could "create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling' which, upon close inspection, might turn out to lack sufficient equitable justification." Id. Critically, Congress's response to Brockamp was not to incorporate a broad-reaching tolling provision in the Internal Revenue Code but a targeted (and stringent) provision that, by its terms, extended only to certain specifically enumerated periods, which did not include the three-year period for change of election status in Section 6013(b)(2). See § 6511(h)(1) ("In the case of an individual, *the running of the periods specified in subsections (a), (b), and (c)* [of Section 6511] shall be suspended during any period of such individual's life that such individual is financially disabled.") (emphasis added). Accordingly, the court finds that Congress did not intend the equitable tolling doctrine to apply to Section 6013(b)(2)'s time limitations.[11]

---

6511 accounts for extensions, the period under Section 6013(b)(2)(A) is "determined without regard to any extension of time granted to either spouse." This further suggests that Congress intended the three-year period to constitute a firm deadline.

[11] Moreover, it is not obvious that Margaret Huff-Rousselle would necessarily be eligible for equitable tolling of the limitations period even if the court had the power to grant it. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)). Here, Margaret Huff-Rousselle waited approximately sixteen months between the date of her husband's death on June 25, 2015, and when she mailed the Form 1040X on October 16, 2016. There is no explanation in the record for the sixteen-month delay.

V.    CONCLUSION

The court recognizes that the result here may strike Petitioner as unfair. Indeed, by all indications, Margaret and Peter Huff-Rousselle were, year after year, diligent in paying their taxes in full and on time (even if their returns were sometimes tardy). Moreover, the Huff-Rousselles appear to have erred on the side of caution by overpaying their taxes and applying any excess to future years' payments. Now, after the premature death of Margaret Huff-Rousselle's husband, she understandably seeks to recover some of these overpayments. And her frustrations in trying to communicate with the IRS may well be shared by many taxpayers. However, as the Supreme Court noted in Brockamp, Congress has deemed it proper to place hard limits on when amendments may be made. 519 U.S. at 352–53 ("Congress decided to pay the price of occasional unfairness in individual cases . . . in order to maintain a more workable tax enforcement system."). While Margaret Huff-Rousselle's case may well constitute the occasional unfair result, it is the result required by the statutory scheme. Accordingly, the government's Second Motion for Summary Judgment [#39] is GRANTED.

IT IS SO ORDERED.

Date: September 16, 2021                                              /s/ Indira Talwani
                                                                     United States District Judge